November 8, 2019

Internal Revenue Service
Attn: Voluntary Disclosure Coordinator
2970 Market Street,
1-D04-100
Philadelphia, PA 19014
Fax: 267-466-1115

**Voluntary Disclosure Practice - Application (Part II)**
Re:    Dan Rotta, SS# ▓▓▓7422

Dear Voluntary Disclosure Coordinator:

    Please be advised that I represent the above-referenced taxpayer and have enclosed my IRS Form 2848, Power of Attorney. My client has received preclearance to proceed with Part II to request preliminary acceptance for the Voluntary Disclosure Practice.

| | | | |
|---|---|---|---|
| Taxpayer: | Dan Rotta | Spouse: | N/A |
| SS#: | ▓▓▓7422 | | |
| Tel: | (305) 606-9600 | | |

Representative:

    Brielle L. Mark, Esq.
    Weisberg Kainen Mark, PL
    1401 Brickell Avenue, Suite 800
    Miami, Florida 33131
    Tel: (305) 374-5544
    Fax: (305) 358-8565
    Email: bmark@wkm-law.com

1. Part II Submission date:  November 8. 2019

2. Case control number (required from preclearance approval): 1750159181

GOVERNMENT EXHIBIT

1:24-MJ-2479-Reid

No. 22

3. Identify the source of funds (check all that apply and explain below):

   ☐ U.S. Source        ☒ Foreign Source        ☐ Illegal Source

   ☐ Gift/Inheritance   ☐ Virtual Currency      ☒ Other

   Explain: The initial source of funds in the foreign financial accounts that are the subject of this Voluntary Disclosure was approximately $2 Million that Dan received as a divorce settlement from his ex-wife Suzanne Bronfman's father, Saie David Bronfman, who was a Brazilian citizen (non-U.S. person) in the late 1990s. An additional $13 Million of a close family friend's money was held by Dan in trust for him in Dan's account in Switzerland. A full explanation is provided in #9, Narrative, below.

4. During the disclosure period, have you taken a position that you were a bona fide resident of a U.S. territory (e.g. American Samoa, Mariana Islands, Guam, Puerto Rico or U.S. Virgin Islands) or did you file an income tax return with a U.S. territory?      ☐ Yes        ☒ No

   If "Yes," list the territory and tax years:

5. Provide estimated total annual **unreported income** during the disclosure period. Input in U.S. dollars using year-end exchange rates AND provide the most recent 6 years unless the noncompliance was for a shorter period.*

   | Tax Year | Unreported Income |
   |---|---|
   | 2012 | $100,000 - $250,000 |
   | 2013 | $250,000 - $500,000 |
   | 2014 | $250,000 - $500,000 |
   | 2015 | $100,000 - $250,000 |
   | 2016 | $100,000 - $250,000 |
   | 2017 | N/A – all income timely reported |

   * The unreported income listed in the chart above represents the taxpayer's pro-rata share of the income in the foreign financial accounts. There is additional income in the foreign financial accounts which belongs to a non-U.S. person, Sergio Cernea, as explained in #9, Narrative, below.

6. Provide estimated annual range of the highest aggregate value of your offshore holdings (**Offshore Issues Only**).*

| Tax Year | Highest aggregate value / Asset Value |
|---|---|
| 2012 | $2,000,000 - $5,000,000 |
| 2013 | $2,000,000 - $5,000,000 |
| 2014 | $2,000,000 - $5,000,000 |
| 2015 | $1,000,000 - $2,000,000 |
| 2016 | $2,000,000 - $5,000,000 |
| 2017 | N/A – 2017 FBAR timely filed but may need to be amended |

\* The highest aggregate value listed in the chart above represents the taxpayer's pro-rata share of the foreign financial accounts. The total highest aggregate value in the foreign financial accounts is higher, however the vast majority of the funds in the foreign financial accounts belong to a non-U.S. person, Sergio Cernea, as explained in #9, Narrative, below.

7. **Offshore Issues only** (check appropriate boxes)

|  | Taxpayer Yes | Taxpayer No | Spouse Yes | Spouse No |
|---|---|---|---|---|
| a. Has anyone, including a foreign government or a foreign financial institution, advised you that your offshore account records, which are the subject of this voluntary disclosure, were susceptible to being turned over to the U.S. Government pursuant to an official request? | ☐ | ☒ | ☐ | ☐ |
| b. If 7a is "Yes," did you or anyone on your behalf submit documents in opposition? | ☐ | ☐ | ☐ | ☐ |
| c. If 7b is "Yes," were copies of those documents provided to the Attorney General of the United States as required by 18 USC §3506? | ☐ | ☐ | ☐ | ☐ |

8. Schedule of Entities
    - List all entities you owned or controlled or were the beneficial owner of, either directly or indirectly for which you reported noncompliant financial accounts in the Part I preclearance request.
    - The listing must cover the entire disclosure period as outlined in the Updated Voluntary Disclosure Practice Memorandum dated November 20, 2018.

    **Entity #1** Edelwiss Corporate Limited (February 9, 2009 – October 27, 2017)
    Country of Incorporation:  BVI

    **Entity #2** The Putzo Foundation (April 20, 2009 – December 19, 2011)
    Country of Incorporation: Liechtenstein

**Entity #3** The Putzo Settlement (October 12, 2011 – November 17, 2016)
Country of Incorporation: BVI

**Entity #4** Majestic Trust (October 26, 2015 – Present)
Country of Incorporation: Florida, USA

9. **Narrative.** Your narrative must truthfully and fully explain your noncompliance from inception to the present. Organize the narrative with the following headings: (1) Noncompliance; (2) Taxpayer Background; and (3) Professional Advisors. "Noncompliance" must include a complete and thorough discussion of all Title 26 and Title 31 failures to report income, pay tax, and submit all required information returns and reports. Address the source of all unreported income. Explain the use of nominees, alter egos and any other methods used to conceal your noncompliance. Completely identify all entities involved in your noncompliance. "Taxpayer Background" must include all aspects of personal and professional history. "Professional Advisors" must include complete details on attorneys, accountants, financial planners, private bankers, etc. that rendered services to you from the inception of the noncompliance to the present, regardless of their connection to or knowledge with your noncompliance. If your disclosure involves offshore issues, provide a complete story about your foreign financial assets.

## Taxpayer Background

Dan Rotta ("Dan") was born on September 18, 1946 in Bucharest, Romania. As a result of the Communist takeover of Romania in the late 1940s, Dan and his family fled to Israel in 1951, when Dan was five years old. In 1957, at age 11, Dan and his family relocated to Brazil, and Dan became a citizen of Brazil around 1961.

In February 1966, Dan moved to the United States to start college in Illinois. He graduated in 1970 with a degree in Chemistry. In 1970, Dan moved to New York to attend City College of New York where he obtained a graduate degree.

In 1972, Dan married Suzanne Bronfman, who was a U.S. green card holder, and Dan became a naturalized U.S. citizen in 1978. Dan and Suzanne had two children, Mark and Vivian, and later divorced in 1996.

In 2001, Dan married Renee Kramer, and prior to marriage Dan and Renee had a son, Peter, in 1994. Dan and Renee divorced in 2009.

Dan worked in a variety of family import/export businesses. Dan first exported general merchandise to Brazil and later imported watches to the U.S. via Switzerland. In 1984, Dan formed a company called Royal Touch, which imported pearls from China and Japan. Then, in 1992, Dan purchased an electrical supply distributing company, which he operated until 2001, after which he sold the business and retired.

After retiring in 2001, Dan moved to Florida where he has lived ever since.

4

**Noncompliance**

The initial source of funds in the foreign financial accounts that are the subject of this Voluntary Disclosure was approximately $2 Million that Dan received as a divorce settlement from his ex-wife Suzanne Bronfman's father, Saie David Bronfman, who was a Brazilian citizen (non-U.S. person) in the late 1990s. Mr. Bronfman already had accounts in Switzerland so he suggested to Dan that he should open an account in Switzerland as well.

Additionally, a very close family friend and cousin, Sache Cernea, asked if Dan would hold his funds in Dan's account in Switzerland. Sache was born in 1916 in Romania. Sache's and Dan's families knew each other going back many years in Romania. Sache's son, Sergio Cernea, was born in Romania in 1947 and within a year, the family moved to Brazil. Dan's family moved to Brazil several years later and they continued to be very close family friends. Sache was like an uncle to Dan, and Sergio remains as close as a brother.

A Holocaust survivor, Sache had been a successful industrialist in Romania. But after the war, the Communist Party took over in Romania and took everything he had. After moving to Brazil, Sache became a successful businessman once again. However, based on his past experiences, combined with the unstable and corrupt regime in Brazil, he did not trust the government. This is why he asked Dan to hold approximately $13 Million of his money in trust for him in Dan's account in Switzerland.

Sache's money had been at Trade Development Bank in Geneva, built by Edmond Safra, an international banker who Sache's father had a personal relationship with. Trade Development Bank was sold to American Express in 1983 and a few years later to Compagnie de Banque et d'Investissements. After all this turnover, Sache did not have confidence in the bank or any of its constantly changing personnel, and felt more comfortable with Dan holding his money in trust for him. Dan was instructed by Sache that the funds were to go to Sergio when Sache died. In the meantime, Sache trusted Dan to make investment decisions. In 2006, Sache passed away.

Sergio Cernea was and continues to be a Brazilian citizen (non-U.S. person). Other than these accounts in Switzerland with Dan, Sergio has no other accounts outside of Brazil, except in the United States.

Over the years, Dan and Sergio worked closely with Swiss bankers and advisors, who suggested many different corporate structures in different jurisdictions. They had accounts at several banks, and the account numbers would generally change when the entity changed. This was always done at the suggestion and advice of the bankers and advisors. The advisors often met with Dan and Sergio in Switzerland with papers already prepared for their signature. Both Dan and Sergio had access to the accounts and were able to withdraw funds when they needed them. Since that time, the vast majority of the funds in the accounts belong to Sergio, as evidenced by the withdrawals he has made in recent years from these Swiss accounts to his U.S. accounts.

In the earlier years, Dan was listed on the bank and entity documents as the beneficial owner. Later, Sergio was listed as the beneficial owner. Regardless of who was listed as the beneficial owner, they knew between the two of them that the funds belonged in part to Dan and in part to Sergio. It is understood that if Dan dies, Sergio will have control of all of the funds. As Sergio has no children or other heirs, and because of Sergio's affection for Dan's son Peter, it is also understood that if both of them die, and if Peter survives them, Peter will get all of the funds.

<u>Edelwiss Corporate Limited, Tortola, BVI (February 9, 2009 – October 27, 2017)</u>

In connection with the formation of a structure recommended by Dan and Sergio's Banque Bonhôte & Cie SA banker, Edelwiss Corporate Limited ("Edelwiss"), a BVI corporation, was formed on February 9, 2009, to serve as the holding company for Dan and Sergio's Swiss accounts. Sergio was the sole beneficiary of Edelwiss. In April 2009, 100 percent of the issued and outstanding shares of Edelwiss were transferred to the Putzo Foundation as noted below.

<u>The Putzo Foundation (April 20, 2009 – December 19, 2011)</u>

On April 20, 2009, The Putzo Foundation, a Vaduz, Liechtenstein foundation, was formed to serve as the sole shareholder to Edelwiss. Accounts under The Putzo Foundation/Edelwiss structure were held at the following Swiss banks: Credit Suisse #▮▮▮▮▮▮▮57-75, open from May 11, 2009 through November 28, 2017; and Banque Bonhôte & Cie SA #6403, open from April 22, 2009 through April 28, 2017.

<u>Putzo Settlement (October 12, 2011 – November 17, 2016)</u>

Putzo Settlement, a BVI revocable trust, was formed on October 12, 2011 at the recommendation of a banker at Banque Bonhôte & Cie SA. Sergio Miguel Cernea is named as the Settlor, and Bonhôte Trust Corporation Limited is the Trustee. The shares of Edelwiss were transferred to Putzo Settlement after formation.

The accounts held by Edelwiss described above (Credit Suisse #▮▮▮▮▮▮▮57-75 and Banque Bonhôte & Cie SA #6403) remained open in this structure. In addition, Putzo Settlement also opened Banque Bonhôte & Cie SA #11484, which remained open from May 28, 2015 through April 12, 2017.

<u>Majestic Trust (October 26, 2015 – Present)</u>

Majestic Trust, a Florida entity, was formed on October 26, 2015. Per the Trust Agreement, Sergio Cernea is the Grantor and Dan and his son Peter are the discretionary beneficiaries.

Majestic Trust holds two financial accounts with Vontobel Holding AG: #▮▮▮▮▮▮▮4.001 and #▮▮▮▮▮▮▮4.002, both of which were opened and funded in 2017 from funds held directly and indirectly by the Putzo Settlement (Credit Suisse #▮▮▮▮▮▮▮57-75, Banque Bonhôte & Cie SA #6403, and Banque Bonhôte & Cie SA #11484).

Summary

From 2011 forward, Dan took certain actions to become U.S. tax and reporting compliant on a current and going forward basis, but was never properly advised as to how to accomplish this. During the VDP period, including tax years 2012 through 2017, Dan indirectly held accounts with Credit Suisse, Banque Bonhôte & Cie SA, and Vontobel Holding AG. When the accounts were at Credit Suisse, Banque Bonhôte & Cie SA, Dan's role was merely as a power of attorney as the funds in the account primarily belong to Sergio, with very little still belonging to Dan. Dan was not aware that he may have an obligation to file an FBAR based on his power of attorney role.

We are still in the process of obtaining account statements to determine the exact amounts that belong to Dan, and to understand his reporting obligations.

Dan has had several CPAs over the years and has tried to become compliant. His primary CPA for his personal income tax returns was Avrohom Roth. When he told Mr. Roth that he may need to file an FBAR, Mr. Roth told Dan that he had no experience with this, and referred him to a different CPA to prepare the FBAR. Once the financial accounts were opened at Vontobel in 2017 under the Majestic Trust, Dan tried to start properly reporting to the IRS on Form 3520 and FBAR starting in 2017. Mr. Roth failed to realize that additional international information returns may be required for prior years as well as going forward.

**3) Professional advisors**

Dan engaged several professional advisors over the years to advise him on his cross-border investments. Enrico Gaspare, Paul Schmid and Michel Frutiger were a few of the bankers at Banque Bonhôte & Cie SA banker.

Dan engaged Avrohom Roth to prepare his U.S. income tax returns from 2012 until present. Prior to Mr. Roth, Dan worked with Jerry Langsner, CPA at Kofler & Company in New York to prepare his personal and business tax returns.

For U.S. legal matters, Dan engaged an attorney from Carter Ledyard & Milburn in New York to handle a personal and corporate tax audit for him, and later engaged Ira Stechel from Akerman LLP to resolve the tax matter in tax court, which was resolved very favorably for the taxpayer, with no assessment of additional tax or penalties. Dan also has engaged Mitchell Katz and Gregory Ritter from Ritter Chusid, LLP, in Coral Springs, Florida to handle trust and succession planning for him, as well as serving as Trustees for the Majestic Trust.

Dan also has consulted with Dr. Silvan Hürlimann of PMH Partners AG in Zurich to assist in responding to the Credit Suisse and Banque Bonhôte & Cie SA mutual assistance requests.

**Conclusion**

As noted above, Dan opened his Swiss accounts primarily to receive a divorce settlement from his ex-father-in-law. He later agreed to hold funds for a trusted family friend/cousin, Sache Cernea, and later his son Sergio. Around 2011, Dan made a conscious effort to become U.S. tax and reporting compliant on a going forward basis; however, he did not seek or receive proper U.S. tax legal advice as to how to remediate his U.S. tax filings. He is now coming forward to properly resolve all U.S. tax and reporting compliance matters truthfully, accurately, and completely under the terms of the updated IRS Voluntary Disclosure Practice.

By signing this document, I certify that I am willing to continue to cooperate with the Internal Revenue Service, including in assessing my income tax liabilities and making good faith arrangements to pay all taxes, interest, and penalties associated with this voluntary disclosure.

Under penalties of perjury, I declare that I have examined this document and accompanying statements, and to the best of my knowledge and belief, they are true, correct, and complete.

Taxpayer:
By: _[signature]_      Date: November 8, 2019
Name:   Dan Rotta